IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


MICHAEL G. CURRY,
      Petitioner,

vs.                                Case No. 3:08cv539/LAC/EMT

EDWIN G. BUSS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 7).  Petitioner filed a reply (Doc. 12).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

    The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 7, Exhibits).[2]  Petitioner was charged in the Circuit Court in and

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 7).  If a cited page has more than one page number, the court cites to the page number that appears in the lower right corner.

for Escambia County, Florida, with one count of burglary of a dwelling with assault or battery (Count 1), one count of kidnapping without a weapon (Count 2), one count of sexual battery with slight force (Count 3), one count of grand theft from a dwelling of property over $100 but less than $300 (Count 4), one count of possession of a controlled substances, less than 20 grams of marijuana (Count 5), and one count of battery upon a person 65 years or older (Count 6) (*see* Ex. B at 225–26). Following a jury trial on February 13–14, 2003 (Exs. C, D), Petitioner was convicted as charged on Counts 3 and 5, the sexual battery with slight force charge and the possession of a controlled substance (cannabis) charge, respectively (Ex. D at 289–90, Ex. E at 271–72). The jury could not reach a verdict on the remaining counts; therefore, the court declared a mistrial as to those counts (*id.*). Petitioner was sentenced to fifteen (15) years of imprisonment, with pre-sentence credit of 187 days, on Count 3, and a consecutive term of eleven (11) months and twenty-nine (29) days on Count 5 (Ex. B at 122–28, Ex. D at 295–96).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D03-1087. Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. H). Petitioner filed a pro se initial brief (Ex. I). The First DCA affirmed the judgment per curiam without written opinion on October 14, 2004, with the mandate issuing November 9, 2004 (Exs. J, K). Curry v. State, 884 So. 2d 939 (Fla. 1st DCA 2004) (Table). Petitioner did not seek further review.

On June 2 and 4, 2003, Petitioner was re-tried on Counts 1, 2, 4, and 6 (Exs. L, M). He was convicted of burglary of a dwelling with assault or battery (Count 1), false imprisonment (Count 2), grand theft from a dwelling over $100 but less than $300 (Count 4) and battery upon a person 65 years of age or older (Count 6) (Ex. M at 274). He was sentenced to thirty (30) years of imprisonment, with pre-sentence credit of 297 days, on Count 1, to run consecutively to the sentence he was then serving, a concurrent term of five (5) years on imprisonment on Count 2, and concurrent

terms of five (5) years of imprisonment on Counts 4 and 6, to run concurrently with any sentence he was then serving (Ex. L at 278–79, Ex. N).[3]

      Petitioner, through counsel, appealed the judgment to the First DCA, Case No. 1D03-2690. The First DCA affirmed the judgment per curiam without written opinion on October 14, 2004, with the mandate issuing November 1, 2004 (Exs. J, R). Curry v. State, 884 So. 2d 27 (Fla. 1st DCA 2004) (Table). Petitioner did not seek further review.

      On October 5, 2005, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. A at 1–13). The state circuit court appointed counsel for Petitioner and held a limited evidentiary hearing on two of Petitioner's seven claims (id. at 18–19, 23–81). On August 14, 2007, the state circuit court denied Petitioner's Rule 3.850 motion (Ex. B). Petitioner appealed the decision to the First DCA, Case No. 1D07-4554 (Ex. T). On November 20, 2008 the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing December 8, 2008 (Exs. W, X). Curry v. State, 995 So. 2d 956 (Fla. 1st DCA 2008) (Table).

      Petitioner filed the instant federal habeas action on December 1, 2008 (Doc. 1 at 10).[4] Respondent concedes that the petition is timely (Doc. 7 at 4).

II.    STANDARD OF REVIEW

      Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

---

    [3] The written judgment originally failed to reflect the court's oral pronouncement that the sentences on Counts 4 and 6 were to run concurrently with any sentence Petitioner was then serving (see Ex. N). The court ordered correction of the judgment on December 4, 2003 (id.).

    [4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on

---

[5] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neeley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether

its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786).   Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 2010 WL 609844, at * 18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[6] thereby giving the

---

[6]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to

---

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[7]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful

---

[7] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[8]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was

---

[8] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[9] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate.

---

[9] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

## IV.  PETITIONER'S CLAIMS

A.    Ground One:  "Trial court denied Petitioner's federal right to pro se representation without conducting a proper hearing."

Petitioner states prior to trial, he requested to represent himself and asked for a hearing on the matter (Doc. 1 at 5).  He states a hearing was held, but the trial court only inquired why Petitioner felt he was qualified to represent himself (*id.*).  Petitioner asserts the trial court failed to ask any questions required by federal law (*id.*).  He states he exhausted this issue by raising it on direct appeal (*id.*).

Respondent contends Petitioner failed to exhaust this issue because he did not fairly present it on direct appeal (Doc. 7 at 4–7).  Respondent states Petitioner raised an issue of denial of his right to self-representation in his pro se initial brief (filed in his first direct appeal), but under materially different facts (*id.* at 5–7).  Respondent contends the claim is therefore procedurally barred from federal review (*id.* at 4–7).

The state court record shows that Petitioner presented the following issue in his first direct appeal:

ISSUE I.
THE TRIAL COURT ABUSED ITS DISCRETION; (A) BY DENYING APPELLANT'S REQUEST FOR APPOINTMENT OF NEW COUNSEL, (B) BY DENYING APPELLANT PRO SE REPRESENTATION AND (C) BY DENYING REQUEST FOR A CONTINUANCE TO HIRE ANOTHER ATTORNEY, THEREBY DEPRIVING APPELLANT OF DUE PROCESS, FAIR TRIAL AND COMPETENT COUNSEL.

(Ex. I at 16).  In relevant part, Petitioner argued that the trial court violated his Sixth Amendment right to represent himself by failing to conduct an adequate inquiry under Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (*id.* at 17–18).  Petitioner argued the trial court's Faretta inquiry consisted of only one question, that is, why Petitioner believed he was qualified to represent himself (*id.* at 17).  Petitioner argued the court's failure to conduct a proper Faretta inquiry deprived him of his right to represent himself and constituted fundamental error (*id.* at 17–18).

The undersigned concludes that Petitioner presented the state court with the same claim he presents here.  Therefore, the claim was exhausted.  Accordingly, the court will analyze whether Petitioner has established entitlement to relief under § 2254(d).

       1.       Clearly Established Federal Law

"The Sixth and Fourteenth Amendments of [the] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment."  Faretta v. California, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527, 45 L. Ed. 2d 562 (1975).  The Sixth Amendment, however, also includes the right to self-representation.  *Id.*, 422 U.S. at 831–32.  The Supreme Court has held that, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages

of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotations and citation omitted); *see also* Patterson v. Illinois, 487 U.S. 285, 298, 108 S. Ct. 2389, 2398, 101 L. Ed. 2d 261 (1988). The Supreme Court also recognized that a defendant's right to represent himself, if he voluntarily elects to do so, "does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel." *See* Wheat v. United States, 486 U.S. 153, 159 n.3, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

 2. Federal Review of State Court Decision

As discussed *supra*, Petitioner raised this claim in his first direct appeal (Ex. I at 16–18). The First DCA affirmed the conviction per curiam. Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002) (summary nature of state court's decision does not lessen deference it is due under AEDPA); Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th  Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

In determining whether the state court unreasonably applied Supreme Court precedent, this court looks to the Eleventh Circuit's interpretation of the relevant Supreme Court law. The Eleventh Circuit held that the right to counsel "is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does 'not attach unless and until it [i]s asserted.'" Stano v. Dugger, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc) (quoting Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir.1986)). Waiver of the right to counsel and invocation of the correlative right to self-representation is no simple matter, however, and two requirements must be met. First, the defendant must "clearly and unequivocally" assert his desire to represent himself thus waiving his right to counsel. Second, the court must determine that the defendant has made this election "knowingly and intelligently." However, to invoke his Sixth Amendment right under Faretta, a defendant must unambiguously state his request to represent himself, either orally or in writing, so that no reasonable person can say that the request was not

made.  Dorman, 798 F.2d at 1366.  Because of the gravity of the accused's decision, his request to proceed pro se must be clear and unequivocal.  Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) (defendant did not clearly and unequivocally request to represent himself and waive counsel where defendant seemingly requested to proceed pro se, but clarified the nature of his request by explaining that he essentially wished to act as co-counsel) (citations omitted); *see also* Stano, 921 F.2d at 1145 (Faretta inapplicable where defendant did not assert or even "faintly request" right to self-representation, and his conduct showed that he never envisioned representing himself).

Once there is a clear assertion of the right to self-representation, the court should conduct the Faretta hearing.  Raulerson v. Wainwright, 732 F.2d 803, 808 (11th Cir. 1984).  Indeed, "[t]he ideal method of assuring that a waiver of counsel is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation."  United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing Strozier v. Newsome, 926 F.2d 1100, 1104 (11th Cir. 1991) ("Strozier II")).  This helps to establish that the defendant unambiguously has chosen to represent himself.  Cross, 893 F.2d at 1291.  "While a pretrial hearing is preferred, it is not required. . . . The absence of a hearing will not give rise to a violation of the Sixth Amendment right to counsel in the 'rare cases [where] the record may support a waiver.'"  Cash, 47 F.3d at 1088 (quoting United States v. Fant, 890 F.2d 408, 409 (11th Cir. 1989) (per curiam)).

Courts should not "quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense."  Brown v. Wainwright, 665 F.2d 607, 610 (Former 5th Cir. 1982) (full bench en banc) (citing Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242, 51 L. Ed. 2d 424 (1976) (courts must indulge every reasonable presumption against waiver of counsel)).  Equally, a defendant who initially requests to waive counsel may subsequently abandon or waive the waiver.  Dorman, 798 F.2d at 1367 (citing Brown, 665 F.2d at 611).  This may be accomplished through the defendant's request or deduced from his conduct reasonably showing that he has abandoned his original request.  *Id.*  For example, a defendant who vacillates on the issue or continues to seek the benefit of representation may be found to have relinquished his request to represent himself.  *Id.* (citing Brown, 665 F.2d at 612).  Additionally, a defendant may waive his

right of self-representation by electing to act as co-counsel.  Raulerson, 732 F.2d at 809 (citing Brown, 665 F.2d at 611; Chapman v. United States, 553 F.2d 886, 893 n.12 (5th Cir. 1977)).

While the accused need not "continually renew his request to represent himself even after it is conclusively denied," the request may be considered abandoned if the court leaves the matter open and the defendant fails to re-assert his request.  Brown, 665 F.2d at 611.  In Brown, the trial court expressed doubt as to the ability of the defendant to carry on his own defense and, therefore, deferred ruling on the request and directed counsel to attempt to resolve the difficulties with his client.  Id. at 609.  Because the defendant began to again work with counsel and never renewed his request to proceed pro se despite ample opportunity to do so, he was held to have abandoned his request altogether.  Id. at 611.

In the instant case, the record shows that on February 3, 2003, ten (10) days prior to Petitioner's first trial, a hearing was held on Petitioner's motion to discharge trial counsel (Ex. E at 261–70).  The trial court questioned Petitioner as to the reasons he wished to discharge counsel, and Petitioner responded that defense counsel (1) failed to interview or depose defense witnesses, (2) lied to him, (3) failed to provide copies of depositions and other discovery for his review, (4) advised him he needed to enter a plea and hope that the judge sentenced him to the minimum, instead of going to trial and receiving a life sentence, (5) told him he (Petitioner) was stupid, and (6) had a conflict of interest because he (defense counsel) was being sued by a friend of Petitioner's family (id. at 261–66).  Defense counsel responded that he had attempted to locate and interview witnesses provided by Petitioner, but the witnesses could not be located or were unwilling to testify (id. at 266–27).  Counsel stated he had conducted discovery and was ready for trial (id. at 268–69).  The trial judge denied Petitioner's motion to discharge counsel and directed counsel to provide depositions and other discovery materials to Petitioner for his review prior to trial (id. at 269).

On the morning of trial, February 13, 2003, defense counsel advised the trial court that Petitioner again wished to address the issue of counsel's alleged incompetent representation (Ex. C at 4).  The court took testimony regarding defense counsel's alleged failure to locate and interview witnesses identified by Petitioner (id. at 4–17).  The following exchange then occurred:

> THE DEFENDANT: This man [defense counsel] is not working for the best of my interest.

THE COURT:   Oh, really?   Just because he makes decisions that are disagreeable to you, he's not working in your best interest?  Are you a trained legal professional, sir?

THE DEFENDANT:  No.

THE COURT:  Do you understand the rules of evidence?

THE DEFENDANT:  That is the definition of him.  He is nothing more than a legal expert, an expert when it pertains to the law, nothing more.  He is my assistant.  This is my trial.

THE COURT:  Sir, let me explain to you if you don't like your attorney, you're free to go out and hire your own attorney.

THE DEFENDANT:  Okay.  I asked for a continuance until at least a week so that I can get my family to get me another attorney.

THE COURT:  This matter has been pending since August 13, 2002.  Today's date is February 13.

THE DEFENDANT:  And I've seen my lawyer twice, ten minutes, and not discussed any of the details with him.

MR. HARRISON [defense counsel]:  Not true.

THE COURT:  All right.

THE DEFENDANT:  Is true.  Jail records will show that.

THE COURT:  We're going over things I've already ruled on.  What else do you want to say?

THE DEFENDANT:  Will you give me till [sic] next Monday to get another attorney?

THE COURT:  No sir.  You had over five months to hire an attorney.  All right.  Call the witnesses forward.  Let's get them sworn.

THE DEFENDANT:  I haven't finished, sir.

> THE COURT:  You're finished sir.  You're just going over matters we've already gone over a number of times.

(Ex. C at 17–18).  The court administered the oath to the trial witnesses.  Another exchange occurred regarding the issue of Petitioner's representation at trial:

> THE DEFENDANT:  Your Honor, at this time, I'd like to fire my attorney and go pro bono—I mean, pro se, excuse me.

> MR. HARRISON:  I'll stand by and let him handle his own defense, that would work quite well, if Mr. Curry fancies himself a lawyer—

> THE COURT:  Is that what you want to do, Mr. Curry?

. . . .

> THE DEFENDANT:  If I'm deemed qualified to do so.

> THE COURT:  Well, you tell me why you think you're deemed qualified to do so.

> THE DEFENDANT:  Well, look at what I'm against.  Mr. Attorney tells me, you know—

> MR. HARRISON:  I tell him he's facing consecutive life sentences if he's convicted.

> THE DEFENDANT:  I mean, has it not been obvious from the start that this guy has not been working in my best interest, you know, from—

> THE COURT:  Mr. Curry—

> THE DEFENDANT:  —who accused me as soon as I saw him, to him, who's done nothing but accuse me, okay, how has the public defender's office worked in my best interest?

> MR. HARRISON: Judge, we have a courtroom full of people here right now.  Mr. Curry has been making statements about the public defender's office.  This Court is aware that I've been practicing before this Court for four years—

> THE COURT:  I'll tell him, all right?

> MR. HARRISON:  Thank you.

THE DEFENDANT:  So that's why you've been violating people's civil rights and that's why you have a civil case against you.

THE COURT:  Mr. Curry, Mr. Harrison tries as many cases as any criminal defense attorney in this city—

THE DEFENDANT:  I don't doubt it.

THE COURT:   —all right?   And his success rate, his success rate with winning acquittals is as good, if not better, than most criminal defense attorneys in this city, all right?  Now, he's tried—

THE DEFENDANT:  So how does that pertain to my case?

THE COURT:  How it pertains in your case is that Mr. Harrison is a vigorous and zealous representative of his clients.

THE DEFENDANT:  He's come to see me twice.

THE COURT:  Whether he's come to see you twice or not doesn't mean he has not prepared your case.  He's done discovery.  He's taken depositions.

THE DEFENDANT:  (Unintelligible) —of my witnesses that I wish to call.  Does he have any expert medical testimony lined up for me today?  Mr. Harrison?  No.

MR. HARRISON:  Answer the questions of the Court.

THE DEFENDANT:  Is that not pertinent in my case?

MR. HARRISON:  Actually, medical testimony—

THE DEFENDANT:  Yes, we have Dr. Charles Neal testifying.  We have Mr. Neal—Dr. Neal testifying.  Don't you think I would need expert medical testimony?

THE COURT:  About what?  About what?

THE DEFENDANT:  To interpret the medical evidence.

THE COURT:  To interpret the medical evidence about what?

THE DEFENDANT:  Well, I was in the hospital.  My accuser was in the hospital.

THE COURT:  Does anybody deny or dispute that you were in the hospital?  That's not in dispute.

THE DEFENDANT:  So you're saying it's irrelevant for me to have expert medical testimony?

THE COURT:  Well, right now it is because I don't know what you need relevant—

THE DEFENDANT:  Why don't you just skip the trial and go ahead and sentence me, because you're the only one out of the whole group that hasn't stated your belief.

THE COURT:  About what?

THE DEFENDANT:  About my guilt or my innocence.

THE COURT:  Sir, I don't know anything about the facts of this case, just like the jury doesn't.  We're going to sit here and listen to the facts and the jury will make an informed and fair decision.

Now, do you want to represent yourself without the advice and assistance of an attorney?

MR. HARRISON:  I'll stand by, Judge.  If he needs help, I'll just stay here with him but let him give his opening statement and—

THE COURT:  He's already tried one sexual battery case this week that resulted in an acquittal.

MR. HARRISON:  Quite a different set of facts on that one.

THE COURT:  Well, it is a different set of facts but it was still a situation where there was a sexual battery and the complaining witness said that she was forcibly violated, and the jury believed the defendant.

THE DEFENDANT:  Why couldn't we continue it for a week?  You gave the prosecution a 60-day continuance.  Mr. Harrison had ample time to come up with all of my witnesses, subpoenas for all of my witnesses.  He has thrown everything in in the last week.

THE COURT:  All right.  Well, you're not getting a continuance.

Let's get back to the question:  Do you want Mr. Harrison to continue to represent you or are you going to represent yourself?

THE DEFENDANT:  I don't know.  Am I qualified?

THE COURT:  You tell me.

THE DEFENDANT:  I don't know.  Let's have a <u>Faretta</u> hearing.

THE COURT:  Well, that's what we're doing.  You tell me why you think you're qualified to represent yourself

THE DEFENDANT:  I don't think that I'm qualified.

THE COURT:  All right.

THE DEFENDANT:  I feel I have no choice.

THE COURT:  All right.  Well, then I'm not going to let you represent yourself.  Mr. Harrison will represent you.

THE DEFENDANT:  I did notice there was never a decision on my motion to quash for imperfect allegations citing *Disney (phonetic) vs. State*, 73 Southern 598[10], state statute 3892, state statute 1085, my amendment for jury instructions, state statute 3341, state statute 3463 and 1041, no decision?

THE COURT:  Those motions are denied.  As far as jury instructions, we'll take those up again at the close of the trial.  Bring the jury in.

(Ex. C at 20–25).

The record shows that Petitioner initially waived his right to counsel and requested to proceed pro se.  However, his statements and conduct during his subsequent dialogue with the court reasonably suggest he abandoned his original waiver of counsel and his request to represent himself. For example, Petitioner did not reject either of Mr. Harrison's offers to serve as standby counsel.[11] Furthermore, near the end of the dialogue when the court directly asked Petitioner whether he wanted

---

[10] In <u>Disney v. State</u>, 73 So. 598 (Fla. 1916), the Florida Supreme Court noted that "[i]nformal or imperfect allegations of essential facts in an indictment should be taken advantage of by motion to quash."

[11] As previously noted, a defendant's agreement to proceed with the assistance of an attorney waives his request to proceed pro se unless and until he reasserts his right of self-representation.  <u>Raulerson</u>, 732 F.2d at 809 (citing <u>Brown</u>, 665 F.2d at 611; <u>Chapman</u>, 553 F.2d at 893 n.12).

Mr. Harrison to represent him, or whether he intended to represent himself, Petitioner answered "I don't know," and then admitted he did not think he was qualified to represent himself.  Moreover, when the court announced its decision that Petitioner would not be permitted to proceed pro se and would be represented by Mr. Harrison, Petitioner responded by inquiring about matters unrelated to the court's determination on the issue of self-representation.

Additionally, the trial court's dialogue with Petitioner elicited sufficient information from which the court could determine whether Petitioner's waiver of counsel was knowing and intelligent, thus fulfilling the purpose of <u>Faretta</u>.  Petitioner's statements and conduct during that dialogue, most importantly his acknowledgment that he did not believe he was qualified to represent himself, provided a sufficient basis to conclude that his waiver of counsel was not knowing and intelligent.  Therefore, Petitioner has failed to demonstrate that the state court's denial of his <u>Faretta</u> claim was contrary to or an unreasonable application of clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

B.    <u>Ground Two: "Trial court denied Petitioner's federal right to a fair trial by including the "union" portion of the sexual battery jury instruction when Petitioner's information alleged only penetration."</u>

Petitioner states he was charged by amended information with sexual battery "by inserting his penis into the anus of the victim." (Doc. 1 at 5).  He states the trial court, without objection, instructed the jury that as to the second element of the offense, the State had to prove that "the defendant committed an act upon [the victim] in which the sexual organ of the defendant penetrated or had union with the anus of [the victim]."  Petitioner states the trial court also instructed the jury that "union means contact."  Petitioner contends union was not an element of the offense as charged; therefore, the court erred by including it in the jury instruction (*id.* at 5–6).  Petitioner asserts he raised this claim on direct appeal and in his Rule 3.850 motion (*id.* at 7).

Respondent concedes Petitioner argued on direct appeal that the jury instruction was erroneous because he was charged with penetration, and the instruction on union misled and confused the jury (Doc. 7 at 8).  Respondent contends Petitioner did not fairly present his claim as federal in nature; therefore, to the extent he now raises a federal claim, the claim was not exhausted (*id.*).  Respondent contends Petitioner has no proper method of returning to state court to present his

federal claim; therefore, it is procedurally defaulted and barred from federal review (*id.* at 8–10). Moreover, Respondent contends, any alleged error had no substantial and injurious effect or influence on the jury's verdict, because by proving penetration, the State "unavoidably proved 'union.'" (*id.* at 10).

Review of the record confirms that Petitioner did not fairly present a federal claim on direct appeal of his conviction. The entirety of his argument on this issue was the following:

> ISSUE V:
>
> THE TRIAL COURT ERRED BY INCLUDING "UNION" PORTION OF THE SEXUAL BATTERY'S JURY INSTRUCTION AS THE APPELLANT'S INFORMATION ALLEGED ONLY "PENETRATION," THEREBY MISLEADING AND/OR CONFUSING THE JURY.
>
> Appellant's information alleged penetration of [the victim]'s anus with his penis. In **Palazzolo v. State, 754 So2d 731 (2nd DCA Fla. 2000)** the court stated "union" which is not an alternative to "penetration." See also **Richard v. State, 738 So2d 415 (2nd DCA Fla. 1999) and Gill v. State, 586 So2d 471 (4th DCA Fla 1991)**. By giving this erroneous alternative to penetration it mislead and or confused the jury. An erroneous jury instruction is reversible error.

(Ex. I at 24). Petitioner did not cite in conjunction with the claim a federal source of law on which he relied or a case deciding such a claim on federal grounds. Further, none of the jury instruction issues decided in the Florida cases he cited were decided on federal grounds. *See* Palazzolo v. State, 754 So. 2d 731, 737 (Fla. 2d DCA 2000); Richard v. State, 738 So. 2d 415, 418 (Fla. 2d DCA 1999); Gill v. State, 586 So. 2d 471, 472–73 (Fla. 4th DCA 1991). Indeed, Petitioner did not even label his claim "federal." Therefore, the undersigned concludes Petitioner did not fairly present a federal claim concerning the jury instruction in his brief on direct appeal.

Additionally, the undersigned rejects Petitioner's contention that he exhausted his claim of trial court error by raising a related claim of ineffective assistance of counsel (based upon counsel's failure to object to the inclusion of "union" in the jury instruction) in his Rule 3.850 motion. Although the claims share common facts (the wording of the jury instruction and the fact that it was given), the federal claims are based upon entirely different legal grounds and governed by completely different legal standards. Petitioner did not fairly present a freestanding federal challenge to the jury instruction independent of his ineffective assistance of counsel claim. Therefore, the undersigned concludes he failed to exhaust his state court remedies as to Ground Two.

Moreover, any future attempt to exhaust state remedies would be futile under Florida law, since Petitioner may not take a second appeal of his conviction, and a second Rule 3.850 motion would be subject to dismissal as untimely and successive.  *See* Fla. R. Crim. P. 3.850(b), (f). Therefore, Ground Two is procedurally defaulted.  *See* Bailey, 172 F.3d at 1303.

As previously noted, a procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see* Coleman, 501 U.S. at 750, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see* Murray, 477 U.S. at 495–96.  Petitioner failed to show he is entitled to federal review under either exception to the procedural bar.  Therefore, he is not entitled to review of this claim.

C.      Ground Three:  "Petitioner's federal right to protection against double jeopardy was violated."

Petitioner states at the conclusion of his first trial, the jury returned a partial verdict, which was accepted by the trial court (Doc. 1 at 7).  As a result, he was convicted of sexual battery (*id.*). Petitioner states that prior to his re-trial on the charges for which the court declared a mistrial, the State amended the charging document to add a charge of battery on a person 65 years of age or older (*id.*).  He states at his re-trial, he was convicted of burglary with a battery and battery on a person 65 years of age or older (*id.* at 7–8).  He states the jury was not aware that he was previously convicted of sexual battery (*id.* at 8).  Petitioner contends the battery convictions were based upon the same act and, therefore, violated double jeopardy (*id.*).  He also asserts his counsel failed to object to the convictions on double jeopardy grounds (*id.*).  Petitioner states he raised this claim in his Rule 3.850 motion (*id.* at 7).

Respondent contends Petitioner failed to exhaust either a freestanding double jeopardy claim or a claim of ineffective assistance of counsel based upon counsel's failure to object to the alleged double jeopardy violation (Doc. 7 at 12–15).  As to a freestanding double jeopardy claim, Petitioner failed to present it on direct appeal of his convictions or in his Rule 3.850 motion (*id.* at 13–14).  As to the ineffective assistance of counsel claim, Petitioner raised it in his Rule 3.850 motion, but failed to argue it on direct appeal of the state circuit court's denial of the Rule 3.850 motion (*id.* at 14–15). Therefore,  neither claim was exhausted, and both are procedurally barred from federal review (*id.*).

Respondent's argument is supported by the record.  Petitioner did not raise a double jeopardy challenge to any of his convictions on direct appeal (*see* Exs. I, O).  Additionally, he did not raise a freestanding double jeopardy claim in his Rule 3.850 motion (Ex. A at 1–13).  Therefore, that claim was not fairly presented to the state courts.

Petitioner raised a claim of ineffective assistance of counsel, based upon counsel's failure to raise a double jeopardy issue, as Ground Four in his Rule 3.850 motion (Ex. A at 7).  The state circuit court held an evidentiary hearing on two of Petitioner's other post-conviction claims, but not this one.  Following the evidentiary hearing, the state circuit court denied all of Petitioner's claims (Ex. B at 110–20).  In Petitioner's appellate brief, Petitioner's counsel raised only two issues, one of which was summarily denied and the other was a subject of the evidentiary hearing (Ex. T).  Neither of the issues raised on appeal was the ineffective assistance of counsel claim based upon counsel's failure to raise a double jeopardy challenge to Petitioner's convictions (*id.*).  The State filed an answer brief addressing only the two issues presented in Petitioner's initial brief (Ex. U).  The First DCA affirmed the lower court's decision denying Petitioner's Rule 3.850 motion (Ex. W).

The Florida Rules of Appellate procedure provide that in a case where a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion must file an initial brief.  *See* Fla. R. App. P. 9.141(b)(3); *see also* Pennington v. State, 34 So. 3d 151, 152 n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion).  It is well established in Florida courts that claims for which an appellant has not presented any argument, or for which he provides only conclusory argument, are insufficiently presented for review and are waived.  *See* Gamble v. State, 877 So. 2d 706 (Fla. 2004); Reed v. State, 875 So. 2d 415 (Fla. 2004); Cooper v. State, 856 So. 2d 969, 977 n.7 (Fla. 2003); Marshall v. State, 854 So. 2d 1235, 1252 (Fla. 2003) Sweet v. State, 810 So. 2d 854, 870 (Fla. 2002); Johnson v. State, 769 So. 2d 990, 1005–06 (Fla. 2000); Shere v. State, 742 So. 2d 215, 217 n.6 (Fla. 1999); Duest v. Dugger, 555 So. 2d 849, 852 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").  Florida courts consistently apply this rule, even in cases where a post-conviction evidentiary hearing is limited in scope to some but not all post-conviction claims; thus, a movant wishing to preserve any claims for appellate review, whether summarily denied or not, must present

argument on those issues in his initial brief.[12]  *See* <u>Prince v. State</u>, 40 So. 3d 11 (Fla. 4th DCA 2010); <u>Hammond v. State</u>, 34 So. 3d 58 (Fla. 4th DCA 2010) (claim for which appellant did not present argument, or for which he provided only conclusory argument, was insufficiently presented for appellate review, regardless of whether claim was among those claims litigated at evidentiary hearing or among those claims summarily denied by trial court); <u>Williams v. State</u>, 24 So. 3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in appellate brief); *see also* <u>Ward v. State</u>, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc) (where all of appellant's post-conviction claims were summarily denied, but appellant chose to file initial brief on appeal (even though not required to do so under Fla R. App. P. 9.141(b)(2)), appellant abandoned any issues not addressed in initial brief); <u>Watson v. State</u>, 975 So. 2d 572 (Fla. 1st DCA 2008) (same); <u>Austin v. State</u>, 968 So. 2d 1049 (Fla. 5th DCA 2007) (same)).

The undersigned concludes that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his appellate brief (or for which he provides only conclusory argument), even when the insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas.  *See, e.g.*, <u>Corn v. McNeil</u>, No. 3:08cv199-MCR-EMT, 2010 WL 5811343 (N.D. Fla. Nov. 24, 2010) (unpublished), *Report and Recommendation adopted*, 2011 WL 88713 (N.D. Fla. Feb. 10, 2011); <u>Ross v. McNeil</u>, 5:07-cv-219-RS-EMT, 2010 WL 2179039 (N.D. Fla. Apr. 14, 2010) (unpublished), *Report and Recommendation adopted*, 2010 WL 2179037 (N.D. Fla. May 28, 2010) (unpublished), *cert. of appealability denied*, No. 10-13013-A (11th Cir. Oct. 4, 2010) (certificate of appealability sought on issue of whether Florida's procedural rule, that defendant waived or abandoned appellate review of post-conviction claims that were summarily denied and not addressed in defendant's appellate brief, where trial court held evidentiary hearing

---

[12] Even if the Florida appellate courts were not absolutely consistent in applying this rule, such is not required to permit a federal court to conclude that a state procedural rule is adequate for federal habeas purposes.  *See* <u>Maples v. Allen</u>, 586 F.3d 879, 888 (11th Cir. 2009) (while "regularly followed" means "closely hewn to," it does not mean complete unanimity or absolute consistency of state decisions applying the rule) (citations omitted).

on other claims, was firmly established and regularly followed); Sharp v. McNeil, No. 4:07-cv-17-MP-MD, 2009 WL 981594, at **13–14 (N.D. Fla. Apr. 10, 2009) (unpublished); Durain v. McNeil, No. 2:08-cv-24-FTM-29DNF, 2008 WL 4888989, at *9 (M.D. Fla. Nov. 12, 2008) (unpublished); Williams v. McDonough, No. 8:02-CV-965-T-30MAP, 2007 WL 2330794, at **1–2 (M.D. Fla. Aug. 14, 2007) (unpublished); Walker v. Sec'y, Dep't of Corr., No. 8:05-cv-1539-T-17MAP, 2007 WL 1747181, at *4 (M.D. Fla. June 18, 2007) (unpublished).[13]

Therefore, the undersigned agrees with Respondent's position that the ineffective assistance of counsel claim included in Ground Three was not properly exhausted in the state courts. Additionally, Petitioner has no available avenue through which he may properly exhaust his claim in the state courts. Therefore, the claim is considered procedurally defaulted. Moreover, Petitioner has failed to show cause for his failure to properly exhaust either of the claims presented in Ground Three; and he has not shown he is entitled to review under any other recognized exception to the procedural bar. Therefore, he is not entitled to federal review of Ground Three.

D.     Ground Four: "Petitioner's federal right to a fair trial was denied when trial counsel failed to impeach State witness Mary Veach, with an inconsistent statement made in her pretrial deposition, thus withholding significant exculpatory evidence."

Petitioner states defense counsel took a pre-trial deposition of the victim's neighbor, Mary Veach (Doc. 1 at 7–8). The victim called the police from Ms. Veach's home after the crimes occurred (see id.). Petitioner states that during the deposition, counsel asked Ms. Veach if the victim told her she had been raped, and Ms. Veach responded, "Well, she told me that he tried to. She didn't say that she actually was or anything like that." (id.). Petitioner states at trial, defense counsel asked Ms. Veach what the victim told her, and Ms. Veach responded, "Well, this man entered her home and that he tied her to the bed and then proceeded with her." Defense counsel asked, "And by proceeded with her, you mean sexually, right?" Ms. Veach stated, "Yes." Petitioner contends defense counsel should have impeached Ms. Veach with the inconsistent statement from her deposition (id. at 8). He states he raised this claim in his Rule 3.850 motion (id. at 7).

---

[13] The undersigned cites Corn, Ross, Sharp, Durain, Williams, and Walker only as persuasive authority and recognizes that the opinions are not considered binding precedent.

Respondent contends if this claim is construed as an issue that could have been raised on direct appeal, the claim is procedurally barred, because Petitioner did not raise it on appeal (Doc. 7 at 15–16). Respondent additionally contends that although Petitioner presented the same facts in Ground Five of his Rule 3.850 motion, he did not mention any federal basis for his claim (*id.* at 16). Therefore, the claim is not exhausted and procedurally barred (*id.*). Lastly, Respondent argues that if this court determines the federal claim was fairly presented, Petitioner failed to establish that the state court's adjudication of the claim was contrary to, or involved an unreasonable application of, clearly established federal law (*id.* at 16–20).

Review of the record shows that Petitioner raised a claim of ineffective assistance of counsel based upon counsel's failure to impeach Ms. Veach as Ground Five of his Rule 3.850 motion (Ex. A at 7–8). Petitioner did not expressly refer to federal law in Ground Five of his motion, but he referred to his Fifth, Sixth, and Fourteenth Amendment rights to effective assistance of counsel in his first two claims of ineffective assistance asserted in his Rule 3.850 motion (Ex. A at 3–5). The state circuit court construed all of Petitioner's ineffective assistance claims as federal in nature and expressly applied the federal standard to each of his ineffective assistance of counsel claims (Ex. B at 111–13). The state circuit court summarily denied Ground Five (*id.* at 118–19). On appeal of the state circuit court's decision, Petitioner argued that the lower court erred in summarily denying the claim because the claim was not facially invalid or conclusively refuted by the record (Ex. T at 30–36). It could be argued that Petitioner's appellate challenge to only the process he was afforded in the lower court, not the substantive disposition of his claim, did not constitute proper exhaustion of his substantive claim of ineffective assistance of counsel.[14] Assuming, without deciding, that

---

[14] It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See* Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief"). Therefore, to the extent Petitioner's claim challenges only the process afforded him in the state collateral review proceeding and does not present a constitutional challenge to Petitioner's confinement, it does not provide a basis for federal habeas relief.

Petitioner exhausted the substantive disposition of his federal claim in the state courts, Petitioner has failed to show he is entitled to relief under § 2254(d).

      1.     Clearly Established Federal Law

      The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Id. at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

      "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do."  Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293

(citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.      Federal Review of State Court Decision

As previously noted, Petitioner raised this ineffective assistance of counsel claim as Ground Five in his Rule 3.850 motion (Ex. A at 7–8). The state circuit court correctly identified the Strickland standard as the controlling legal standard (Ex. B at 112–13). The state circuit court

denied Petitioner's claim on the ground that even if counsel had impeached Ms. Veach's testimony with her deposition testimony, the jury was presented with the victim's testimony and the emergency room doctor's testimony that the victim reported to him that she had been "sexually assaulted rectally and vaginally." (*id.* at 119). The state circuit court concluded Petitioner failed to demonstrate that he was prejudiced by counsel's action or inaction with regard to Ms. Veach's testimony (*id.*).

Comparing the relevant portions of Ms. Veach's trial testimony and deposition testimony leads the undersigned to conclude that the state court reasonably determined that Petitioner failed to show he was prejudiced by counsel's failure to impeach Ms. Veach. During Ms. Veach's deposition, defense counsel asked her if the victim told her (Ms. Veach) that she had been raped, and Ms. Veach responded, "Well, she told me that he tried to. She didn't say that she actually was or anything like that. And she told me how he had, you know, tied her down." (Ex. F at 251–52).

At trial, Ms. Veach testified that the victim came to her back door on August 11, 2002 (Ex. C at 46–48). She testified the victim was not wearing anything but a small towel across her breasts (*id.* at 49). Ms. Veach noticed that a stocking was tied around the victim's arm, and her arm was bruised (*id.*). On cross-examination by defense counsel, Ms. Veach testified that the victim did not seem hysterical and appeared "calmer than I would have been" (*id.* at 51). Defense counsel asked, ". . . [the victim] never actually told you that she had been raped, right?" (*id.*). Ms. Veach responded, "Yes." (*id.*). Defense counsel asked, What did she tell you? What were her—what was her statement to you about what happened?" (*id.* at 52). Ms. Veach testified, "Well, this man entered her home and that he tied her to the bed and then proceeded with her." (*id.*). Defense counsel clarified, "And by proceeded with her, you mean sexually, right?" (*id.*). Ms. Veach responded, "Yes." (*id.*).

Even if Ms. Veach admitted, through defense counsel's impeachment, that the victim told her only that Petitioner had <u>tried</u> to rape her, there is no reasonable probability that Petitioner would not have been convicted of sexual battery. The amended information charged Petitioner with sexual battery by inserting his penis into the victim's anus without her consent (Ex. B at 225–26). Dr. Charles Neal testified he had treated several hundred patients for injuries resulting from trauma associated with sexual assault (Ex. C at 35–37). He testified he examined the victim in this case on August 11, 2002 (*id.* at 37–38). He testified the victim stated she was seeking treatment for sexual

assault (*id.* at 39).  The victim told him she was sexually assaulted at her home (*id.*).  She also told Dr. Neal she was sexually assaulted rectally and vaginally (*id.*).  Dr. Neal testified he observed circumferential abrasions and bruising around the victim's wrists and legs, bruising between her thighs, abrasions to her legs, bruises on her neck, and bruising of the pubic bone (*id.*).  Regarding the bruising of the pubic bone, Dr. Neal testified the bruise was approximately four inches in diameter right over the top of the pubis bone itself, and it was caused by blunt trauma or force (*id.* at 38–39).  He testified he observed two tears inside the anterior portion of the vagina, one just below the pubic bruise and one on the posterior aspect of the vaginal opening toward the rectal area, consistent with tearing or stretching (*id.* at 39–40).  On cross-examination, Dr. Neal testified he observed some redness around the victim's anus, which he believed was related to rectal penetration (*id.* at 41).  He testified that a rectum that was not frequently penetrated could bleed, bruise or tear, but he could not state with certainty whether he would have seen more evidence of such injuries if a 68-year old woman's rectum was penetrated with a seven-inch penis (*id.* at 42).  He testified that sometimes with the elderly, the muscle tone in the rectum becomes more loose (*id.*).  Dr. Neal testified that the victim did not appear to be in pain and was alert, cooperative, and oriented to person, place, and time (*id.* at 43).

The victim testified that she was awakened during the night of August 11, 2002, to the feeling of something very heavy on top of her (Ex. C at 138).  She testified she was sleeping on her stomach and tried to push the person off her and get away (*id.* at 139–40).  She stated the person told her she had to be quiet or he would hurt her girls (*id.* at 140).  She stated the man was trying to push his penis inside of her, and she was trying to fight him (*id.* at 140–41).  The victim testified that the man's penis made contact with her rectum and penetrated it (*id.* at 141).  She testified that the man did not have her consent to do this to her (*id.* at 142).  She also testified that he forced her to take sleeping pills (*id.* at 142–43).  On cross-examination, defense counsel asked the victim to describe what she felt in her private area when this supposedly happened to her (*id.* at 149–50).  She stated it was very uncomfortable, and it felt like a penis, but she did not reflect on the size (*id.* at 150).

Petitioner failed to show that the discrepancy between Ms. Veach's deposition testimony that the victim told her Petitioner tied her down and tried to rape her, and her trial testimony that the victim told her Petitioner tied her to the bed and "proceeded" with her sexually, was of such

significance that counsel's failure to pursue it was unreasonable.  Additionally, in light of the victim's trial testimony regarding what occured that night, and Dr. Neal's testimony regarding injuries he observed, including redness around the victim's anus, which he believed was related to rectal penetration, Petitioner failed to show a reasonable probability of a different verdict on the sexual battery count if defense counsel had impeached Ms. Veach with her deposition testimony that the victim told her only that Petitioner had tried to rape her.  Therefore, Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of <u>Strickland</u>.

> E.    <u>Ground Five:  "Petitioner's federal rights to due process and equal protection were violated by the trial court's imposition of consecutive sentences for multiple convictions arising from one criminal episode and/or one Information, thereby enhancing the Petitioner's sentence without reason."</u>

Petitioner states he was convicted and sentenced for six different offenses arising out of one criminal episode and one charging document (Doc. 1 at 9).  He states he was sentenced to the statutory maximum for each offense, and three sentences were ordered to run consecutively (*id.*).  Petitioner contends by imposing consecutive sentences without any "finding of reason(s)," the sentencing court exercised "unfettered whim" by enhancing the sentence and failing to ensure uniformity and equality with cases similarly situated, if not identical, to Petitioner's case (*id.*).  He states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent contends Petitioner's claim is not exhausted and is procedurally barred (Doc. 7 at 20–22).  Respondent argues Petitioner should have raised challenges to his consecutive sentences on direct appeal of the judgments imposing such sentences, but Petitioner failed to do so (*id.* at 20–21).  Respondent additionally contends Petitioner did not exhaust this claim in his post-conviction proceedings because he did not raise an issue regarding the consecutive sentences on appeal of the state circuit court's order denying his Rule 3.850 motion (*id.* at 21 n.9).

Review of the record confirms that Petitioner did not raise a challenge to his consecutive sentences on direct appeal of either of the judgments of conviction and sentence (*see* Exs. I, O).  Additionally, although Petitioner challenged the constitutionality of Florida Statutes section

921.16(1) in Ground Seven of his Rule 3.850 motion (*see* Ex. A at 9–11),[15] he did not raise the issue

on appeal of the state circuit court's denial of the Rule 3.850 motion (*see* Ex. T).  Therefore, for the

reasons set forth in section IV.C. *supra*, the claim was procedurally defaulted in the state courts.

Additionally, Petitioner has no available avenue through he may properly exhaust his claim in the

state courts.  Moreover, he has failed to show cause for his failure to properly exhaust the claim

presented in Ground Five; and he has not shown he is entitled to review through any other

recognized exception to the procedural bar.  Therefore, he is not entitled to federal review of Ground

Five.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"

and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28

U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L.

Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the

undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court

may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is

---

[15] Section 921.16(1) provides, in relevant part:

A defendant convicted of two or more offenses charged in the same indictment, information, or
affidavit or in consolidated indictments, informations, or affidavits shall serve the sentences of
imprisonment concurrently unless the court directs that two or more of the sentences be served
consecutively.  Sentences of imprisonment for offenses not charged in the same indictment,
information, or affidavit shall be served consecutively unless the court directs that two or more of the
sentences be served concurrently.

Fla. Stat. § 921.16(1).  Petitioner argued in his Rule 3.850 motion that the statute violated his rights to due process and
equal protection because it was broad and contradictory.

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of April 2011.


                                        /s/ *Elizabeth M. Timothy*
                                        **ELIZABETH M.  TIMOTHY**
                                        **UNITED STATES MAGISTRATE JUDGE**


                              <u>NOTICE TO THE PARTIES</u>


        **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**